# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

BRANDI L.,[1]

              Plaintiff,                        Case No. 2:18-cv-02000-MK

       v.                                  **OPINION AND ORDER**

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

_____

**KASUBHAI, Magistrate Judge:**

      Brandi L. ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental security income pursuant to Tile XVI of the Social Security Act. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The parties consented to full jurisdiction by a U.S. Magistrate Judge. ECF No. 9. For the reasons set forth below, the Court remands for the immediate calculation and award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

## BACKGROUND

Plaintiff filed for a period of disability, disability insurance benefits, and supplemental security income on March 23, 2017. Tr. 242. The amended alleged onset date of disability is February 1, 2016 ("AAOD"). Tr. 24; Pl.'s Br. 1, ECF No. 13; Def.'s Br. 2, ECF No. 16. The claims were initially denied, and Plaintiff timely filed a request for a hearing. Tr. 142-50, 157-63. On April 17, 2018, the Administrative Law Judge ("ALJ") Michele Kelley held a video hearing between Plaintiff in Boise, Idaho, and the ALJ in Billings, Montana. Tr. 41. On May 9, 2017, the ALJ issued an unfavorable decision. Tr. 20. Plaintiff requested an Appeals Council ("AC") review on July 2, 2018. Tr 238-40. The AC denied the request. Tr. 1. Plaintiff now seeks judicial review of the Commissioner's decision.

## <u>Disability Analysis</u>

The definition of disability and the five-step sequential analysis of disability is set forth in 42 U.S.C. § 423(d) and 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). At steps one through four of the sequential inquiry, the burden of proof is on the claimant. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the agency. *Id.* The five-step sequential inquiry, as described in *Tackett*, is explained below.

<u>Step One</u>: The ALJ determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate the claimant's case under step two. 20 C.F.R. § 416.920(b).

<u>Step Two</u>: The ALJ determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant

has one or more severe impairment(s), the ALJ proceeds to evaluate the claimant's case under step three. 20 C.F.R. § 416.920(c).

Step Three: Disability cannot be based solely on a severe impairment. Therefore, the ALJ next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis, despite limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945; *see also* SSR 96-8p, 1996 WL 374184.

Step Four: The ALJ determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the ALJ's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 416.920(e), 416.920(f).

Step Five: At step five, the ALJ's's burden is to demonstrate that the claimant can make an adjustment to other work after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). A claimant who cannot perform other work is disabled. If the ALJ finds the claimant is able to do other work, the ALJ must show that a significant number of jobs exist in the national economy that claimant is able to do. The ALJ may satisfy this burden through the testimony of a vocational expert ("VE"), or by reference to the Medical-Vocational

Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the ALJ demonstrates that a significant number of jobs exist in the national economy that the claimant is able to perform, the claimant is not disabled. If the ALJ does not meet the burden, the claimant is disabled. 20 C.F.R. § 416.920(g).

## The ALJ's Findings

At step one of the sequential evaluation process, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2019. Tr. 25. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the AAOD. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder, anxiety disorder, personality disorder, and hypersomnia. *Id.*

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Act. Tr. 26. The ALJ found that Plaintiff has the RFC to understand, remember, and carry out unskilled tasks. Tr. 27. Plaintiff can maintain attention, concentration, persistence, and pace for eight-hour workdays. *Id.* Further, Plaintiff cannot tolerate interaction with the public, no more than occasional interaction with supervisors, and no more than occasional interaction with coworkers. *Id.*

At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a sample gatherer, cleaner (housekeeping), and janitor. Tr. 32. Therefore, the ALJ held that Plaintiff has not been under a disability as defined by the Social Security Act at any time from September 1, 2012, through the date of the decision. Tr. 34.

## STANDARD OF REVIEW

This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). However, the Court may set aside a denial of Social Security benefits when the agency's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Desrosiers v. Sec. of Health & Human Serv.*, 846 F.2d 573, 575-76 (9th Cir. 1988) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). Substantial evidence is "more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted); *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989). "The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing *Vidal v. Harris,* 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975)). "Where the evidence as a whole can support either a grant or a denial, [this Court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted). But a decision supported by substantial evidence must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

## DISCUSSION

Plaintiff contends that the ALJ erred in finding Plaintiff could sustain work activities in an ordinary work setting on a regular and continuing basis. *See* Pl.'s Br. 7-20, ECF No. 13.

Plaintiff seeks review of the following issues: (1) whether the ALJ erred by rejecting Plaintiff's subjective symptoms for less than clear and convincing reasons; (2) whether the ALJ erred in rejecting the opinion of treating psychiatrist Dr. Steinberg; and (3) whether the ALJ erred by failing to consider Plaintiff's impairments in combination. *Id.* The Court will address each issue in turn.

## I.    Subjective Symptom Testimony

The ALJ improperly rejected Plaintiff's testimony. The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*

The agency employs a two-step process to evaluate a claimant's symptoms. *Molina v. Astrue*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). A plaintiff need only show that her impairment could cause some degree of the symptom; she need not prove the severity or degree of the symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ may not reject a plaintiff's subjective testimony as to the degree of symptoms as long as some objective evidence is produced of underlying impairment. *Id.*

If a plaintiff presents objective evidence of impairment, the ALJ must next find either affirmative evidence of malingering, or give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms. *Id.* (internal citations and quotations omitted). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.

2002)). Lastly, rejection of a claimant's credibility that amounts to little more than a recitation of medical evidence in support of the RFC assessment is insufficient as a matter of law. *Treichler v. Massanari*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 501 (9th Cir. 2015).

First, the ALJ found that there was objective medical evidence of an underlying impairment that could reasonably be expected to produce Plaintiff's symptoms. Tr. 29. Next, the ALJ did not find evidence of malingering. *See* Tr. 23-34. Thus, the ALJ must have provided specific, clear and convincing reasons for rejecting claimant's testimony. Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony of fatigue, anxiety, or difficulty remaining awake during the day. *See* Pl.'s Br. 17, ECF No. 13. Specifically, Plaintiff argues that sporadic completion of minimal activities is an insufficient basis for rejecting Plaintiff's testimony. *Id.* at 16.

One need not vegetate in a dark room in order to be eligible for benefits. *Molina*, 674 F.3d at 1112-13 (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)) (internal quotation marks omitted). "[M]any home activities may not be easily transferable to a work environment" because a plaintiff at home has more flexibility to schedule tasks, get assistance from others, and is not held to a minimum standard of performance as she would be at work. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Garrison*, 759 F.3d at 1016 (internal citations and quotations omitted).

Plaintiff cares for her companion animals, and regularly attends doctor's appointments, counseling, church, and occasionally book club. Tr. 313-14. However, Plaintiff stated that she is unable to work, in part, due to her mental impairments, including severe anxiety and panic attacks when exposed to "everyday living experiences" (e.g., leaving apartment, grocery

shopping, driving, filling out forms, and interactions with people). Tr. 310, 312-13. Plaintiff

testified that she does not cook, has not been reading for book club meetings, neglects household

chores, naps excessively, and has anxiety about leaving her home. Tr. 28, 60-63. Plaintiff states

that her condition affects her ability to think clearly, concentrate, and remember. Tr. 310.

Further, Plaintiff contends that she has sleep abnormalities that impede her ability to function,

which have worsened over time. Tr. 310-11. Despite using multiple alarm clocks, her wake times

are unpredictable. *Id.* Plaintiff described that she is often too tired to complete routine activities

of daily living, such as showering, changing clothes, feeding herself, and household chores. Tr.

312-13.

  The ALJ, however, found that Plaintiff's activities of daily living showed that she has

mental and social functioning consistent with capacity for some work. Tr. 29. Specifically, the

ALJ found that Plaintiff has the capacity for work because Plaintiff applied for jobs (Tr. 1080),

performed part-time work at a bakery (Tr. 696), travelled interstate (Tr. 668), grocery shopped

(Tr. 313), exercised at the gym (Tr. 1044, 1048), and participated in online dating, including

going on a couple of dates (Tr. 68, 1045-46). Tr. 29. The ALJ found that those activities

contradicted Plaintiff's contentions of "complete debility due to fragile mental state." Tr. 29.

  Plaintiff argues that those attempts at social contact are part of her prescribed treatment.

Pl.'s Br. 16-17, ECF No. 13. Plaintiff argues the ALJ improperly used Plaintiff's social activities

as a basis to reject Plaintiff's testimony as to the intensity and persistence of her depression and

anxiety limitations. *Id.* Plaintiff notes that her part-time work at a bakery was prior to the AAOD.

*See* Tr. 696. According to the record, Plaintiff used an online dating site as an attempt to distract

herself from her depressive mood, but after the date, she was "especially exhausted all week."

Tr. 1046. During the time period of dating, Plaintiff regressed on her therapy goal of getting up

at a scheduled time three days a week. *Id.* When Plaintiff occasionally attended the gym and participated in online dating, Plaintiff was also suicidal and took "a cup full" of pills. Tr. 1046-56.

Based on the record, this Court finds that under *Garrison*, none of the activities cited by the ALJ, alone or collectively, are evidence of clear and convincing reasons to reject the claimant's testimony about the severity of her symptoms. *See Garrison,* 795 F.3d at 1016 (internal citation omitted) ("The failure to recognize these differences [between activities of daily living and activities in a full-time job] is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

With respect to Plaintiff's difficulty interacting with people, the ALJ found that the medical records indicate that Plaintiff's impairments are less than marked. Tr. 26. While the ALJ acknowledged that Plaintiff has moderate limitations "due to poor stress tolerance, mood lability, anxiety, and panic systems," the ALJ found that she was able to interact with others regularly. *Id.* The ALJ pointed to Plaintiff's interactions with friends at church and book club, Plaintiff's ability to travel and visit a friend, and Plaintiff's pleasant interactions with treatment providers. *Id.* Further, the Commissioner argues that Plaintiff's reports of her limitations are contradicted by counseling notes from mid-2017 to 2018. Def.'s Br. 6, ECF No. 16. Those notes indicate that Plaintiff was able to make, and sometimes maintain, therapeutic goals, even with reports of persistent depression. *Id.*

But reports of improvement, or that a plaintiff is "doing well" for purposes of a treatment program, do not necessarily relate to a plaintiff's ability to work, and caution should be used in making such inferences. *Garrison*, 759 F.3d at 1017-18. The reports "in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and

the nature of her symptoms . . . [and] with an awareness that improved functioning while being

treated and while limiting environmental stressors does not always mean that a claimant can

function effectively in the workplace." *Id.* at 1017. This Court finds that the ALJ made

impermissible inferences regarding Plaintiff's limitations without providing clear and convincing

evidence to support rejecting Plaintiff's testimony.

While Plaintiff was arguably "doing well" because she was able to have those

interactions, this does not speak to Plaintiff's ability to work and interact with supervisors.

Interactions with friends and medical providers in a clinical setting, whose goals are to support

and help Plaintiff, are not transferable to a work setting. *See Orn* 495 F.3d at 639; *Garrison*, 759

F.3d at 1017. Plaintiff stated that she had problems with bosses in the past. Tr. 315. Plaintiff

testifies that she was fired because she would cry, hyperventilate, and have panic attacks because

she "couldn't do anything right," and the record does not contradict this. Tr. 52. This Court finds

that the ALJ's rejection of Plaintiff's testimony based on her ability to interact with others does

not meet the clear and convincing standard. *See Garrison*, 759 F.3d at 1017-18.

For the reasons discussed, the Court finds that the ALJ erred in rejecting Plaintiff's

subjective testimony.

## II.     Medical Opinion Testimony

The ALJ improperly discredited Dr. Steinberg's medical opinion testimony by failing to

provide specific and legitimate reasons supported by substantial evidence for doing so.

"Medical opinions are statements from acceptable medical sources that reflect

judgements about the nature and severity of [claimants'] impairment(s), including [their]

symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their]

physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

Medical opinions are "distinguished by three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Treating physicians are at the top of the hierarchy of medical opinion evidence because they are most able to provide "a detailed longitudinal picture of… medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." *Garrison*, 759 F.3d at 1012; 20 C.F.R. § 404.1527(c)(2). The opinions of examining doctors are generally favored over those of non-examining doctors. *Ghanim v. Colvin,* 763 F.3d 1154, 1160 (9th Cir. 2014).

The ALJ is required to consider and explain the weight afforded every medical opinion in the record using certain factors, such as the amount of relevant evidence supporting the opinion, the quality of the doctor's explanation, the consistency of the opinion with the record as a whole, and the doctor's familiarity with the record. 20 C.F.R. § 416.927(c). The ALJ need not specifically reference each factor listed in 20 C.F.R. § 404.1527(c). *Harris v. Colvin*, 584 F. App'x 526, 528 n.1 (9th Cir. 2014) (unpublished). However, the ALJ's failure to consider any factor is, on its own, reversible error. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

To reject the uncontradicted opinion of a treating physician, the ALJ must provide clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Notably, "even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn*, 495 F.3d at 633). To reject the contradicted opinion of a treating doctor, the ALJ must provide specific and

legitimate reasons supported by substantial evidence in the record. *Orn*, 496 F.3d at 632 (internal citations omitted).

An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). An ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996). When the Commissioner fails to provide adequate reasons for rejecting the treating physician's opinion, the Court credits the opinion as a matter of law. *Lester*, 81 F.3d at 834.

Dr. Steinberg was the supervising physician who oversaw Plaintiff's treatment at Lifeway by counselor Julie Noethe, MSW and Heidi Brown, PA. Pl.'s Reply Br. 7, ECF No. 17. Plaintiff received treatment at Lifeways from May 2015 through March 2018. Tr. 662-879, 1038-81. Dr. Steinberg's opinion was based on his examinations of Plaintiff and his review of past Lifeway mental health records as well as other records. Pl.'s Reply Br. 7, ECF No. 17. Dr. Steinberg treated Plaintiff for chronic major depressive disorder, chronic tiredness, hypersomnolence, daytime sedation, and poor focus, and has determined that "[s]he is 100% disable[d]." Tr. 921. Dr. Steinberg diagnosed Plaintiff with major depressive disorder, unspecified anxiety disorder, uncomplicated bereavement, idiopathic hypersomnia with long sleep time, attention-deficit/hyperactivity disorder (predominately inattentive presentation). Tr. 921.

Plaintiff has a longstanding history of depression and anxiety. She has been hospitalized for concerns regarding severe suicidal ideation and suicide attempts in November 29, 2006, October 24, 2011, and January 2, 2017. Tr. 933, 442-43, 564. Dr. Steinberg opined that Plaintiff "has been tried on all classes and combinations of antidepressants, antipsychotics and mood stabilizers and nothing has been effective." Tr. 915. Most recently on September 29, 2017, she was hospitalized at Dr. Steinberg's suggestion. Tr. 1002, 925. Dr. Steinberg assessed that Plaintiff "has profound treatment resistant depression and has failed all classes of meds. She would benefit most from an inpatient stay." Tr. 925-26. Following the inpatient stay, Dr. Steinberg referred Plaintiff to Dr. Montgomery for a consultation for electroconclusive therapy ("ECT"). Pl.'s Br. 3, ECF No. 13; Tr. 917. Plaintiff underwent ECT treatment and reported memory issues, continued depression, and an increase in sleep. Tr. 1038, 1040.

Here, Dr. Steinberg rendered an opinion regarding Plaintiff's inability to work. Tr. 914-16. The ALJ gave the treating physician Dr. Steinberg's opinion minimal weight but gave non-examining physicians Dr. Ju and Dr. Sought's opinions significant weight. Tr. 31-32. The ALJ reasoned that Dr. Steinberg's opinion relied too greatly on Plaintiff's subjective complaints, was inconsistent with Plaintiff's activity level, and was inconsistent with the medical record. Tr. 31.

a.    <u>Non-Examining Physicians</u>

The Commissioner suggests that Dr. Steinberg's opinion is contradicted by the opinions of two state agency consulting doctors, Dr. Ju and Dr. Sought. Def.'s Br. 4, ECF No. 16. Dr. Steinberg opined that Plaintiff had marked extreme limitations. Tr. 914. By contrast, Dr. Ju and Dr. Sought opined that Plaintiff had moderate limitations and could perform the work with restrictions similar to the RFC. Tr. 31, 103-05, 137-38.

To reject the contradicted opinion of a treating doctor, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 496 F.3d at 632 (internal citations omitted). Opinions of non-examining physicians cannot by themselves "constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Shater*, 81 F.3d 821, 831 (9th Cir. 1995). But "opinions of a non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ reasoned that the evidence supports the opinions and assessments of Dr. Ju and Dr. Sought. Tr. 31-32. As mentioned above, Dr. Ju and Dr. Sought concluded Plaintiff had moderate limitations. Tr. 31, 103-05, 137-38. In coming to this conclusion, the state psychologists noted Plaintiff's activities of daily living, her ability to move apartments, her regular exercise when walking her dog, her support from her church friends, and intact mental status. Tr. 32. They further concluded that Plaintiff's physical problems were not severe. Specifically, they considered respiratory illness, obesity, and obstructive sleep apnea. *Id.*

Plaintiff argues that neither Dr. Ju nor Dr. Sought examined Plaintiff, and that neither considered later treatment records because their evaluation occurred before the relevant events. Pl.'s Br. 9, ECF No. 13. Plaintiff explains that the record as reviewed by Dr. Ju and Dr. Sought did not include, for instance, documentation regarding her recent hospitalization due to her suicidal ideation, her psychiatric evaluation by Dr. Montgomery (Tr. 917), her hospitalization for ECT Treatments (Tr. 1012-37), and Dr. O'Donnell's records and treatment for idiopathic hypersomnia and concern for narcolepsy (Tr. 651-61). *Id.* Because the later developed record is inconsistent with Dr. Ju and Dr. Sought's opinions but is consistent with Dr. Steinberg's

opinions, Dr. Ju's and Dr. Sought's opinions cannot serve as substantial evidence to justify the rejection of the opinions of the treating physicians. *Morgan*, 169 F.3d at 600, 602.

      b.     <u>Dr. Steinberg's Reliance on Plaintiff's Subjective Complaints</u>

With respect to subjective complaints, the Ninth Circuit has explained:

> Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnosis will always depend in part on the patient's self-report, as well as the clinician's observations of the patient. But such is the nature of psychiatry . . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Further, "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010).

Dr. Steinberg noted that Plaintiff had panic attacks in response to supervision or correction at work. Tr. 19. The ALJ found that this is based only on Plaintiff's subjective reports and is not documented in her treatment records since Plaintiff's AAOD. Tr. 31. However, since the AAOD, Plaintiff has not worked and thus has not been subject to supervision and correction that could be documented. Further, at step two, the ALJ determined that Plaintiff has severe impairments, including anxiety. In accordance with *Berry*, The ALJ cannot discredit Plaintiff's testimony regarding subjective symptoms (e.g., panic attacks at work) merely because they are unsupported by objective evidence.

      c.     <u>Dr. Steinberg's Consideration of Daily Activities</u>

The *Garrison* Court explained that: "mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . [and] with

an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017. The ALJ gave minimal weight to Dr. Steinberg's opinion because Dr. Steinberg did not consider Plaintiff's "fairly full activities of daily living and leisure activities." Tr. 31. As previously discussed, the ALJ erred in rejecting Plaintiff's subjective testimony based on her sporadic activities as attempts at social contact. Accordingly, the ALJ also erred in rejecting Dr. Steinberg's opinion based on Plaintiff's daily activities without providing specific and legitimate reasons.

       d.    <u>Dr. Steinberg's Consistency with the Medical Record</u>

An ALJ may not simply cherry-pick evidence to support the conclusion that a plaintiff is not disabled; rather, the ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). Nor can an ALJ simply replace the doctor's opinion with her own. *See Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

The ALJ reasoned that Dr. Steinberg's opinion was inconsistent with the medical record. Tr. 31. Specifically, the ALJ explains that Dr. Steinberg wrote that Plaintiff's "inability" to carry out complex instructions was "extreme," "which means that there was no functioning whatsoever[,]" but the medical record showed that Plaintiff was able to work on therapeutic challenges. Tr. 31. However, the ALJ fails to acknowledge that on many occasions Plaintiff failed to make progress or regressed on her therapeutic challenges. *See, e.g.*, Tr. 1030, 1040, 1042, 1044, 1045, 1046, 1048, 1049, 1051, 1053, 1055, 1057. Plaintiff testified that she has limited function and difficulty with her "memory, concentrating, and focusing on things." Tr. 53. Plaintiff further testified that she forgets her address, must write things down on post-its if she is

going to remember, and gets lost. Tr. 66-67. She reported that she "forgot we have a post office" and had to search online to trigger her memory. Tr. 1040.

Moreover, the ALJ found that Dr. Steinberg's report failed to consider that when Plaintiff was able to be busy, she fared better. Tr. 31, 840. However, the ALJ ignored the rest of the record and Dr. Steinberg's opinion regarding Plaintiff's limitations, which as a whole shows that Plaintiff cannot be reliably busy. Further, the ALJ speculated without an explanation that Dr. Steinberg "may not be aware of the range of work at the unskilled level or the meaning of the 'marked' and 'extreme' terms." Tr. 31. The Court finds the ALJ's improperly discredited Dr. Steinberg's opinion regarding Plaintiff's subjective testimony without providing specific and legitimate reasons.

Since the ALJ failed to provide specific and legitimate reasons for discrediting Dr. Steinberg's opinion, the Court credits Dr. Steinberg's opinions as true.

## III. Consideration of Impairments in Combination

The Court finds that the ALJ failed to properly consider Plaintiff's sleep problems when she determined Plaintiff could sustain work activities in an ordinary work setting on a regular and continuing basis. In determining whether a claimant's severe impairments meet the Listing of Impairments contained in the regulations, the ALJ must consider the combined effect when a claimant suffers from multiple impairments. *Macri v. Chater,* 93 F.3d 540, 545 (9th Cir. 1996). "The Commissioner must also 'adequately explain his evaluation of alternative tests and the combined effects of the impairments[.]' Thus, if [the claimant's] conditions – separately or in combination – meet or equal a listed impairment, he is conclusively disabled." *McClain v. Halter*, 10 F. App'x 433, 436 (9th Cir. 2001) (internal citations omitted); 20 C.F.R. § 404.1520(d).

Here, Plaintiff argues that the ALJ failed to consider Plaintiff's various disabling effects in combination. Pl.'s Br. 13-15, ECF No. 13. First, Plaintiff claims that the ALJ failed to properly consider her "sleep problems." *Id.* Second, Plaintiff claims the ALJ failed to consider specific mental health assessments and side effects of her medication and the side effects of the ECT treatment pursuant to 20 C.F.R. § 404.1529(c)(3)(iv). Pl.'s Br. 13, ECF No 13.

    a.  <u>Sleep Problems</u>

The ALJ concluded that the record as a whole did not substantiate more than moderate functioning impairments. Tr. 26-32. The ALJ noted Plaintiff's hypersomnia, sleep apnea, and insomnia, but stated that she accounted for Plaintiff's sleep-related problems in the RFC by restriction to simple tasks and decisions. Tr. 25, 29-30. The ALJ reasoned that Plaintiff's treatment records show that she was alert and oriented in clinical settings, and Plaintiff herself reported that her sleepiness and alertness are not debilitating if she stays occupied. Tr. 30.

Plaintiff contends that the ALJ erred in concluding that Plaintiff is able to sustain activity without a nap after three to four hours of activity. Pl.'s Br. 17, ECF No. 13. Plaintiff testified that she is really tired, does not tend to wake up, falls down the stairs weekly, and falls asleep doing basic activities such as going through papers, balancing her checkbook, and doing the dishes. Tr. 54. Plaintiff testified that when she does manage to engage in activities of daily living, she is able to do so for a few hours but then will get tired and must nap. Tr. 57.

The record also shows that Plaintiff slept more after the ECT treatments. Tr. 1038. Moreover, Dr. Steinberg opined that Plaintiff "has hypersomnia and often sleeps through appointments." Tr. 916. One of Plaintiff's goals in counselling was to work towards waking at a scheduled time three days per week and work on activities scheduled for the day, but frequently

Plaintiff either regressed or at least achieved no progress towards this goal. Tr. 1038, 1043, 1045, 1047, 1067, 1072.

The Commissioner argues that the only evidence in the record regarding this limitation is Plaintiff's testimony and medical records repeating Plaintiff's self-reports. Def.'s Br. 12, ECF No. 16. The ALJ acknowledged that Plaintiff was "sleepy most of the time" and "nap[ped] excessively." Tr. 28. Nonetheless, the ALJ discounted her testimony because it was contrary to the medical record. *Id.* The record showed Plaintiff was alert and oriented in clinical settings and "did not have problems with sleepiness when she was engaged in some form of activity." *Id.*

The Commissioner directs the Court's attention to two medical records to support the finding that Plaintiff does not struggle with sleepiness when she engaged in activities. First, treatment notes from August 25, 2015, which is prior to the AAOD, state, "[Plaintiff] reported she is doing better mentally because she has been busy with other things." Tr. 840. Second, the treatment record from October 27, 2017 reports Plaintiff's comment that "[She] has had times in the past when [she's] been sleepy, and it seems that it is related to my mood. It is just harder to face the day without family and friends to occupy my day." Tr. 1058.

The Commissioner further relies on *Rollins* in discrediting the allegation of Plaintiff's sleep-related limitation. Def.'s Br. 6, ECF No. 16. In *Rollins*, the claimant claimed to have totally disabling pain, but the ALJ found, and the Court affirmed, that the disabling pain was undermined by the claimant's testimony of her daily activities. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). In that case, the claimant attended to all of her children's needs (meals, bathing, emotional, discipline, etc.) and "she left the house 'daily' to go to places such as her son's school, taekwondo lessons and soccer games, doctor's appointments, and the grocery store." *Id.*

As discussed in length above, a plaintiff does not have to be completely incapacitated to be eligible for benefits and many home activities are not transferrable to the work environment, especially here where it might be impossible to rest periodically. *Garrison*, 759 F.3d at 1016. In the context of mental health cases, an ALJ may not simply cherry-pick evidence to support the conclusion that a plaintiff is not disabled; rather, the ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence. *Holohan*, 246 F.3d at 1207.

The medical records that the Commissioner relies on are not sufficient. The first medical record was prior to the AAOD. Tr. 840. The second record simply articulates that the sleep issue may be related to her mood (i.e. a symptom of her found underlying impairment) and it is more difficult when friends and family are not around. Tr. 1058. More recent health assessments following Plaintiff's ECT treatments document that Plaintiff's mood is depressed and that she has been sleeping more often. Tr. 1038, 1042. Again, the ALJ may not reject Plaintiff's subjective testimony as to the degree of symptoms as long as some objective evidence is produced of underlying impairment. *Lingenfelter*, 504 F.3d at 1036. As previously discussed, the ALJ found that Plaintiff produced objective medical evidence of her underlying impairments. Tr. 29. In a working environment, Plaintiff will not be surrounded by family and friends. Neither of the two reports the Commissioner relied on support the proposition that Plaintiff would be able to work in her current state.

Furthermore, this case is distinguishable from *Rollins*. While Plaintiff did participate in a few occasional activities, including applying for jobs, traveling to another state, grocery shopping, exercising at the gym, and participating in online dating, these activities were not done on a daily basis. Rather, Plaintiff reported that she is often too tired to complete routine daily tasks, such as showering, changing clothes, feeding herself, and household chores. Tr. 312-13.

If sleeping limitations were incorporated into the RFC, the VE's testimony makes it clear that this would be outcome determinative. Tr. 81. The VE testified in response to a hypothetical that unexpectedly falling asleep at work or needing to take naps more than 20% of the time would result in job loss. Tr. 81.

Moreover, Dr. O'Donnell in the treatment records for idiopathic hypersomnia expresses a concern that Plaintiff suffers from narcolepsy, for which the Plaintiff was to receive more testing for. Tr. 651-61. Plaintiff claims that the AC erred in failing to review the case because there was good cause for review of new evidence of her sleep study. Pl.'s Br. 19, ECF No. 13. Plaintiff contends that she sent Dr. O'Donnell's sleep study records and continued mental health treatment records to the AC for consideration, but it was not included in the record. *Id.* Plaintiff argues that this evidence is material and if it had been considered, it is reasonably likely that it would have changed the outcome of the Commissioner's decision. *Id.*

The Court need not address the additional evidence because the record is clear that the ALJ erred in failing to credit both Plaintiff's subjective testimony and Dr. Steinberg's medical opinion.

b.  Side Effects

Specifically, Plaintiff argues that the ALJ failed to consider the following side effects that compromised Plaintiff's ability to function: "drowsiness, memory loss, lack of focus, shaky, nausea, headache, or diarrhea." Pl.'s Br. 14, ECF 13. The ALJ did acknowledge Plaintiff's mental health symptoms caused distractibility. Tr. 26. But as explained above, the ALJ improperly discredited Plaintiff's testimony regarding the intensity, persistence and limiting effects of these symptoms.

With respect to the other side effects, the ALJ noted Plaintiff's headaches and "short-term illnesses" and found that they were not so debilitating as to prevent her from completing simple tasks. Tr. 31. The ALJ also noted that any other condition that was not discussed in the ALJ opinion was not severe because it resolved in less than twelve months or it did not cause more than minimal functional impairment. Tr. 26. The Commissioner reasons, and this Court finds compelling, that headaches, nausea, and diarrhea symptoms are only mentioned in a few places in the record and are frequently noted as being absent. Tr. 612-14, 632-34, 655-58, 674-76, 678, 680, 684, 887, 921, 923, 1040, 1042, 1073, 1077. Thus, this Court finds that the ALJ did not err in her consideration of these side effects.

## CONCLUSION

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find

the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, as to the first prong of the credit-as-true analysis, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective testimony and Dr. Steinberg's opinion. As to the second prong, Plaintiff claims that the additional evidence she submitted to the AC would likely change the Commissioner's decision. Nevertheless, even without the additional evidence, the record is clear that Plaintiff is unable to perform a full-time job. Therefore, there is no outstanding issue to be resolved. The second prong of the credit-as-true analysis is met. The third prong is met because it is clear from the record that had the ALJ fully credited Plaintiff's subjective testimony and Dr. Steinberg's opinion, the Commissioner would have been required to find Plaintiff disabled.

Plaintiff requests costs and attorney fees pursuant to the Equal Access to Justice Act. Pl.'s Br. 20, ECF No. 13. This request, however, is premature and will not be addressed in this Opinion and Order. *See* 28 U.S.C. §§ 2412(d)(1)(B), (2)(G).

For the reasons set forth above, the Court remands this case for the immediate calculation and award of benefits.

DATED this 17th day of October 2019.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge